Argued and submitted March 16, ballot title certified as modified April 6, 2000

Kevin K. STARRETT,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General
for the State of Oregon,
*Respondent.*

(SC S47079)

John T. NICHOLS,
*Petitioner,*

*v.*

Hardy MYERS,
Attorney General
for the State of Oregon,
*Respondent,*

*and*

Ginny BURDICK,
*Intervenor.*

(SC S47085)
(Consolidated for Argument and Opinion)

998 P2d 671

Kevin K. Starrett, Canby, *pro se*, argued the cause and filed the petition and reply for petitioner Starrett.

John DiLorenzo, Jr., of Hagen, Dye, Hirshey & DiLorenzo, P.C., Portland, argued the cause and filed the petition and supplemental memorandum for petitioner Nichols.

Rolf C. Moan, Assistant Attorney General, Salem, argued the cause and filed the answering memoranda for respondent. With him on the memoranda were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Steven Novick, Portland, argued the cause and filed the memorandum for intervenor.

GILLETTE, J.

Van Hoomissen, J., dissented and filed an opinion.

## GILLETTE, J.

These two ballot title review proceedings concerning the Attorney General's certified ballot title for a proposed initiative measure, denominated Initiative Petition 99 (2000), have been consolidated for purposes of argument and decision. Petitioners are electors who timely submitted written comments concerning the content of the Attorney General's draft ballot title and who therefore are entitled to seek review in this court. *See* ORS 250.085(2) (setting that requirement). We review the Attorney General's certified ballot title to determine whether it substantially complies with the requirements of ORS 250.035 (1997). *See* ORS 250.085(5) (setting out standard of review). For the reasons that follow, we conclude that the Attorney General's certified ballot title does not do so. We therefore modify it and, as modified, certify it to the Secretary of State.

The proposed measure, entitled the "Gun Violence Prevention Act," would enact statutes that relate, *inter alia*, to the sale of firearms at "gun shows" and to the kind of background check respecting a potential purchaser that must be made before a firearm may be sold. The Attorney General certified the following ballot title for the measure:

"EXPANDS CIRCUMSTANCES REQUIRING BACK-GROUND CHECK BEFORE TRANSFER OF FIREARM

"RESULT OF 'YES' VOTE: 'Yes' vote requires background check before any firearm transfer at gun show or by dealer.

"RESULT OF 'NO' VOTE: 'No' vote rejects expanding current background-check requirement beyond handgun transfers by gun dealers.

"SUMMARY: State law currently requires background check before gun dealer sells handgun. Measure requires: background check before gun dealer transfers any firearm; background check, or transfer through gun dealer, before nondealer may transfer firearm at 'gun show' (event with over 25 available firearms present). Noncompliance creates criminal liability. Authorizes confidential retention, for five years, of information obtained during background check. Expands crimes of providing false information, improper

transfer, to include transfers of all firearms, not just hand-guns. Other changes."

As noted, ORS 250.085(5) requires this court to review challenged ballot titles for "substantial compliance with the requirements of ORS 250.035." As applied to the present proceeding, the latter statute[1] requires that a ballot title contain a caption of not more than 10 words that "reasonably identifies the subject matter" of the proposed measure, ORS 250.035(2)(a) (1997), a "yes" result statement containing a "simple and understandable statement of not more than 15 words that describes the result if the state measure is approved," ORS 250.035(2)(b) (1997), a "no" result statement containing a "simple and understandable state-ment of not more than 15 words that describes the result if the state measure is rejected," ORS 250.035(2)(c) (1997), and a summary that is a "concise and impartial statement of not more than 85 words summarizing the state measure and its major effect," ORS 250.035(2)(d) (1997).

In case number S47079, petitioner Starrett chal-lenges only the legal sufficiency of the Attorney General's caption and summary. With respect to the caption, petitioner Starrett's argument does not establish that the Attorney General's caption fails to comply substantially with the requirements of ORS 250.035(2)(a) (1997). Petitioner Starrett's challenge to the Attorney General's summary is not one that he (or any other party) made during the period for comment on the Attorney General's draft ballot title; nei-ther is it aimed at wording either inserted in or deleted from the ballot title after that comment period. We therefore do not consider it. *See* ORS 250.085(6) (in review process, court shall not consider "arguments * * * not presented in writing

---

[1] The 1999 Legislature amended ORS 250.035(2) in several respects. Or Laws 1999, ch 793, § 1. However, section 3 of that 1999 enactment provides, in part:

"(1) The amendments to ORS 250.035 by section 1 of this 1999 Act do not apply to any ballot title prepared for:

"(a) Any initiative petition that, if filed with the Secretary of State with the required number of signatures of qualified electors, will be submitted to the people at the general election held on the first Tuesday after the first Monday in November 2000[.]"

The present proposed measure is one of those to which the 1999 act does not apply. We therefore apply the pertinent provisions of ORS 250.035(2) (1997).

to the Secretary of State unless the * * * argument concerns language added to or removed from the draft title after expiration of the comment period").

We turn to the arguments presented by petitioner Nichols in case number S47085. Petitioner Nichols challenges the Attorney General's "no" result statement and his summary. We address each of those topics in turn.

■   As noted, the Attorney General's certified "no" result statement provides: " 'No' vote rejects expanding current background-check requirement beyond handgun transfers by gun dealers." That statement is erroneous, petitioner Nichols asserts, because "it suggests that a 'No' vote would result in a situation in which background checks were not required for purchasers of firearms other than handguns." Petitioner Nichols acknowledges that the "suggestion" about which he complains would be correct with respect to *Oregon* law, if the proposed measure is rejected. But, he points out, *federal* law presently requires background checks for the sale of firearms other than handguns. *See* 18 USC § 922(t)(1) (requiring "criminal background check" for sales of "firearms," not just handguns).

Petitioner Nichols asserts that the Attorney General's "no" result statement leaves the erroneous impression that there is no other law regulating the sale of firearms. That erroneous implication can be avoided, he claims, by mentioning "Oregon" specifically in the "no" result statement. (The statement contains only 14 words. Adding "Oregon" between the words "current" and "background" would clarify for the voters that they are making a choice as to Oregon law only.) That argument is well taken. As presently written, the Attorney General's "no" result statement creates the impression that only handguns presently are subject to background checks before purchase. Because that impression is incorrect and need not be created within the 15-word limit for the "no" result statement, it must be corrected for the statement to comply with the requirements of ORS 250.035(2)(c) (1997). Accordingly, we make that addition.

The addition to the "no" result statement in turn dictates a change to the "yes" result statement, to further the parallelism that ORS 250.035(2)(b) and (c) (1997) are intended to reflect. We make that change by substituting the words, "expands Oregon" for "requires" in the "yes" result statement and by deleting the word "any" from that statement.

■      Petitioner Nichols also challenges the Attorney General's summary in three respects, only one of which requires discussion. Petitioner Nichols challenges the accuracy of the sentence in the summary that states that the proposed measure "[a]uthorizes confidential retention, for five years, of information obtained during background check." That sentence is based on the impact of section 6(5)(b) of the proposed measure, which provides that the information obtained in background checks is "exempt from disclosure under public records law." But, as petitioner Nichols points out, Oregon's Public Records Law, ORS 192.410 *et seq.*, is a law that guarantees a right to public inspection of certain public records. Nothing in that law, however, denies a state agency the right to disclose other information in its possession. Thus, although the information collected in background checks need not be disclosed under the Public Records Law, the proposed measure does not deny to any agency in possession of that information the right to disseminate the information as the agency finds appropriate.

Petitioner Nichols's point is well taken. The proposed measure does keep background check information from being subject to disclosure under a demand under the Public Records Law, but it does not thereby render retention of that information "confidential," as the summary states. To comply with the requirements of ORS 250.035(2)(d) (1997), it is necessary to rephrase the sentence to describe what the measure does, while omitting the "confidential" characterization.

Based on the foregoing discussion, we certify to the Secretary of State the following ballot title:

## EXPANDS CIRCUMSTANCES REQUIRING BACK-
## GROUND CHECK BEFORE TRANSFER OF FIREARM

RESULT OF "YES" VOTE: "Yes" vote expands Oregon background check before firearm transfer at gun show or by dealer.

RESULT OF "NO" VOTE: "No" vote rejects expanding current Oregon background-check requirement beyond handgun transfers by gun dealers.

SUMMARY: State law currently requires background check before gun dealer sells handgun. Measure requires: background check before gun dealer transfers any firearm; background check, or transfer through gun dealer, before nondealer may transfer firearm at "gun show" (event with over 25 available firearms present). Noncompliance creates criminal liability. Retains background information five years; bars disclosure under Public Records Law. Expands crimes of providing false information, improper transfer, to include transfers of all firearms, not just handguns. Other changes.

Ballot title certified as modified. This decision shall become effective in accordance with ORAP 11.30(10).

**VAN HOOMISSEN, J.,** dissenting.

I respectfully dissent. In my view, the Attorney General's certified ballot title substantially complies with the requirements of ORS 250.035 (1997). ORS 250.085(5).

The unspoken premise on which this court's modification decision is based is that it does not violate the principle of separation of powers for this court to rewrite a certified ballot title. *See Rooney v. Kulongoski (Elections Division #13),* 322 Or 15, 55, 902 P2d 1143 (1995) (Unis, J., dissenting) (arguing that judicial modification of ballot titles offends Article III, section 1, of the Oregon Constitution); *Sizemore v. Kulongoski,* 322 Or 229, 237, 905 P2d 1146 (1995) (Durham, J., concurring) (same). The court should revisit that premise.